## HIRAM C. MORSE v. JAMES E. DENTON.

*Sale to creditor—Attachment in defiance of—Replevin—Intent—Question for jury.*

This case involves the alleged fraudulent sale of property to pay a debt, and is held to have been fairly submitted to the jury. No evidence was given on the part of the defendant disputing the fact of the indebtedness of the vendor to the plaintiff, the only contention being that this fact was open to suspicion from the testimony of the plaintiff himself, and because a note was not given up, or canceled, at the time of the sale, which it is held were proper matters for the jury to pass upon.

Error to Alpena. (Kelley, J.) Argued October 8, 1889. Decided November 15, 1889.

Replevin. Defendant brings error. Affirmed. The facts are stated in the opinion.

*C. E. Williams* and *J. D. Turnbull,* for appellant.

*Shields & McNamara* (*McGarry & Ford,* of counsel), for plaintiff.

LONG, J. This an action of replevin of a stock of goods which plaintiff claims to have purchased from one Martin A. Rodman. On the trial in the circuit court of Alpena county the plaintiff had verdict and judgment. Defendant brings the case here by writ of error.

The claim of the plaintiff on the trial was that Rodman was indebted to him in the sum of about $1,500, and turned the stock over to him, to pay and discharge the debt. It appears that in the latter part of 1886, Rodman removed from Ionia to Alpena, and opened a jewelry store. He was at that time indebted to Chandler & Shader, wholesale jewelers of Chicago, in the sum of

about $300, for merchandise.   The plaintiff resided at
Ionia, and is the step-father of Rodman.  ·On April 11 or
12, 1887, the plaintiff visited Alpena, and found Rodman
at the police station, suffering from excessive drink.   At·
noon on April 12, Morse and Rodman having returned
to Rodman's house, Morse demanded the payment of his.
claim.   It is claimed by plaintiff that ·here an arrange-
ment was made by him with Rodman by which he pur-
chased the entire stock of goods then in the store at
Alpena in payment of his claim; that the stock was of·
the value of about $1,190; that he, at 4 o'clock in the
afternoon of that day, took possession of the stock, taking·
possession of the keys of the store, and commenced to·
pack up the goods, preparatory to shipping them to·
Ionia.

About 6:30 in the afternoon of the 12th of· April,.
Chandler & Shader caused an attachment to be issued
against Rodman, and placed the same in the hands of
the defendant in this cause, who is sheriff of Alpena.
county, and who seized and took possession of all the·
goods under the writ, and caused the same to be appraised.
After the appraisal the plaintiff brought suit in replevin,
and took all the goods back into his possession.

The claim on the trial by the defendant was that the·
sale to plaintiff was not made in good faith, but as a.
cover to defraud the creditors of Rodman.   At the close·
of the testimony the defendant asked the court to
charge the jury:

"1. That from all the evidence the defendant must.
recover."

This request the court refused, and upon this defend-
ant assigns error.

Counsel argue in their brief, at some length, that there·
were certain suspicious circumstances surrounding the·

claimed sale of the goods by Rodman to the plaintiff; that a bill of sale was made and filed subsequent to the time of the pretended sale, and two other bills of sale subsequently made; that Rodman appeared before the sheriff after the appraisal, and had $250 in value of the goods set off as exempt under the statute, and that the plaintiff, by his testimony, did not show that any price was agreed upon between himself and Rodman for the goods; that, while the plaintiff claimed to hold the note of Rodman, which he claimed to have purchased from one Mr. Webber, yet the note was not surrendered to. Rodman; from which circumstances it must be held that the plaintiff was not the owner of the goods at the time of the levy. Some claim is also made that if plaintiff had any claims upon the goods, it was in the nature of a security, and that he could not be said to be the general owner. These were, however, questions of fact which were in dispute upon the trial, and, under the charge of the court, we think, fairly submitted to the jury. The court charged the jury, among other things:.

"You have a right to consider what Rodman did, and what Mr. Morse (the plaintiff) did, in reference to this property, and immediately before and after the hour or time that it is assumed and claimed this sale was consummated, in determining whether, in fact, it was a sale and transfer of this property."

Again, the court stated to the jury:

"If you are satisfied, when you come to consider all this evidence, that it was a mere cover, intended in fraud of his creditors, then it would be no sale, and it would form the basis of no right to recover in this action by the plaintiff. But you must arrive at your conclusions in reference to the fraudulent intention of these parties from the evidence in this case, and from what the parties did, and from what they said; from the manner in which they treated this property afterwards, and all

the surrounding circumstances that have been brought forward here in the evidence.   *   *   *   Should you arrive at the conclusion that it was not a *bona fide* sale, but that it was a fraud upon the creditors, then the plaintiff would not be entitled to your verdict."

It was thus left to the jury, under a very fair charge, to determine the whole case, from all the evidence and surrounding circumstances,—just what the rights of the parties were. There certainly was no error in this. It is not pretended that any evidence was given on the part of the defendant disputing the fact of the indebtedness of Rodman to the plaintiff; the only contention being that this fact was open to suspicion from the testimony of the plaintiff himself, and the fact that the Webber note was not given up, or canceled, at the time of the purchase, and other circumstances heretofore referred to. But this was a matter for the jury.

One or two of the requests to charge are directed to the question of whether the transaction was a security or an absolute sale, and asking the court to direct the jury that if it was a mere security the plaintiff could not recover. There was no claim made on the trial by the plaintiff that he took the goods as a mere security; but his whole testimony is that he purchased them, and went into possession of them, and was so in possession at the time of the levy of the writ of attachment. Some talk, apparently, was had between plaintiff and Rodman about their affairs, and what could be done for Rodman; but, under the testimony, there was no error in refusing the instructions asked.

Some errors are assigned, also, upon the ruling of the trial court in admitting certain testimony under defendant's objection. We have read the record with some care, and find no error in these rulings, and need not go over

the questions specifically.    We are satisfied the case was very fairly tried and very fairly submitted to the jury, under the charge given, and find no errors in the record. ·

The judgment must be affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred.